## UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF LOUISIANA
## ALEXANDRIA DIVISION

**KERRY BARRETT, ET AL**          **CIVIL ACTION NO. 1:20-CV-01346**

**VERSUS**                        **JUDGE DAVID C. JOSEPH**

**DRESSER, LLC, ET AL**           **MAGISTRATE JUDGE JOSEPH H.L. PEREZ-MONTES**

## MEMORANDUM RULING

Before the Court are two Rule 12(b)(6) Motions to Dismiss for Failure to State a Claim (collectively, the "Motions") filed, respectively, by: (i) Defendants Dresser, LLC, Dresser RE, LLC, Baker Hughes Company, and Baker Hughes Energy Services, LLC (collectively, "Dresser"), and by: (ii) Defendant Halliburton Energy Services, Inc. ("Halliburton") in the above-captioned matter. [Docs. 18, 27]. Given the interrelatedness of issues therein, as well as Halliburton's adoption of Dresser's Motion to Dismiss and supporting memorandum, the Court herein addresses the Motions collectively. For reasons which follow, the Motions are GRANTED IN PART and DENIED IN PART.

## BACKGROUND

This dispute arises from alleged property damage sustained by adjacent landowners resulting from operations at an industrial valve manufacturing facility located in Rapides Parish, Louisiana (the "Dresser Facility"). [Doc. 1]. Plaintiffs claim that, for the approximately 50 years during which the Dresser Facility was in operation, solvents, cutting oils, acids, and caustics were disposed of improperly – thereby causing groundwater and soil contamination to their respective properties. [*Id.*].

1

In 2012, Dresser discovered elevated levels of hydrocarbons ("TPH") in the groundwater adjacent to the Dresser Facility and notified the Louisiana Department of Environmental Quality ("DEQ") of the excessive TPH concentrations.  [*Id.*].  Since its disclosure of the excessive TPH concentrations, Dresser alleges that it has complied with the DEQ's instructions concerning its remediation efforts.  [Doc. 18-1].  The Dresser Facility ceased operations in 2016 [Doc. 1], and the contamination is subject to ongoing investigation and remediation activities.  [Doc. 18-1].  Pursuant to these efforts, the DEQ notified adjacent property owners and residents in affected areas of potential contamination of their properties in January of 2020.  [Doc. 33-9].

On October 16, 2020, Plaintiffs filed suit against Dresser and Halliburton [Doc. 1].  Plaintiffs are 22 individuals and juridical entities that own property near the Dresser Facility.  [*Id.*].  Due to several mergers and acquisitions, Defendants are five entities or successor entities that allegedly owned or operated the Dresser Facility at various intervals from 1998 to 2016.  [Doc. 1].  The Complaint asserts seven causes of action: negligence, strict liability, custodial liability, liability for damage caused by ruin of a building, trespass, private nuisance, and public nuisance.  [*Id.*].  Because of the length of time during which the Dresser Facility was operational and its varying ownership structure throughout this time period, Plaintiffs premise their claims against Defendants, in part, on a successor liability theory.  [*Id.*].  In addition, Plaintiffs argue that the continuous tort doctrine is applicable based on the alleged continuing contamination of the groundwater and soil underlying their properties.  [*Id.*].

Defendants move for dismissal of this action on two grounds.  First, they claim that the Complaint is a "shotgun" pleading and thus does not meet Rule 8's pleading requirements.   [Doc. 18-1].   Second, they maintain that, even accepting the allegations as true, many of Plaintiffs' claims fail as a matter of law.  [*Id.*].

Plaintiffs opposed Dresser's Motion on December 3, 2020 [Doc. 30] and Halliburton's Motion on December 22, 2020.  [Doc. 37].  Dresser filed a reply brief on December 8, 2020.  [Doc. 32].

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move for dismissal of a plaintiff's claims before filing its answer when the pleadings, on their face, fail "to state a claim upon which relief can be granted."  A pleading states a claim for relief when, *inter alia*, it contains "a short and plain statement … showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when it contains sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  Plausibility requires more than just the "sheer possibility" that a defendant acted unlawfully; it calls for enough facts "to raise a reasonable expectation that discovery will reveal evidence" to support the elements of the claim.  *Twombly*, 550 U.S. at 556.  Although the Rule 8 pleading standard does not require "detailed factual allegations," mere "labels and conclusions," or "a formulaic recitation of the elements of a cause of action" do not suffice.  *Id.* at 555.

In ruling on a Rule 12(b)(6) motion, a court may rely on the complaint, its attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).  A court must accept as true all factual allegations, although the same presumption does not extend to legal conclusions.  *Iqbal*, 556 U.S. at 678. In sum, if the factual allegations asserted in the complaint are wholly speculative or if it is apparent from the face of the complaint that there is an absolute bar to recovery, the claim should be dismissed.  *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955.

## LAW AND ANALYSIS

### I.   Satisfaction of Rule 8's Pleading Requirements

Defendants first argue that the Complaint is deficient under Rule 8 because it is a "shotgun pleading" that impermissibly cumulates all claims against all Defendants without apprising each Defendant of the specific claims against it.  [Doc. 18-1].  Coined by the Eleventh Circuit, a "shotgun pleading" fails "to give the defendants adequate notice of the claims against them and the grounds upon which [each] claim rests." *Sistrunk v. Haddox*, CV 18-516, 2020 WL 2549699, at *11 (W.D. La. May 19, 2020) (quoting *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1323 (11th Cir. 2015)).

Contrary to Defendants' assertion, the Complaint does not resemble the type of pleading typically condemned as "shotgun pleading."  The Complaint states the respective time periods during which each defendant owned or operated the Dresser Facility and alleges that the activity causing the contamination occurred throughout the changes in ownership.  Plaintiffs further allege that their properties were

contaminated by pollution that resulted from Defendants' disposal of hazardous substances at the Dresser Facility.  Finally, Plaintiffs have set forth the legal theories relied upon and specify the remedies they seek.

Because the Complaint describes the facts underlying the Plaintiffs' claims in a manner sufficient to notify Defendants of the claims against them – thereby allowing them to prepare responsive pleadings – it does not constitute an improper "shotgun pleading."  Other courts in this district and across the circuit have likewise found complaints with analogous factual allegations sufficient under Rule 8.  *See, e.g.,* *Gaspard One, L.L.C. v. BP Am. Prod. Co.*, CIV. A. 07-1551, 2008 WL 863987, at *3 (W.D. La. Mar. 31, 2008) (holding that the petition satisfied Rule 8 because it identified the subject property, timing of the contamination, and hazardous substances at issue); *Constance v. Austral Oil Exploration Co.*, Nos. 2:12–CV–1252, 2:12–CV–1253, 2013 WL 6578178, at *4 (W.D. La. Dec. 13, 2013) (finding the complaint sufficient because it listed "the identities of all parties ... to the case, as well as detailed descriptions of the property at issue ... [,] the legal theories under which recovery is sought, as well as the types of damages sought"); *see also Morgan Plantation, Inc. v. Tennessee Gas Pipeline Co.*, LLC, 16-CV-1620, 2017 WL 4864489 (W.D. La. Sept. 21, 2017), *report and recommendation adopted*, 2:16-CV-1620, 2017 WL 4847523 (W.D. La. Oct. 26, 2017); *Martin v. Tesoro Corp.*, 2:11 CV 1413, 2012 WL 1866841 (W.D. La. May 21, 2012) *Alford v. Chevron U.S.A. Inc.*, 13 F.Supp.3d 581 (E.D. La. 2014).

Any additional information sought by the Defendants regarding the specific nature of Plaintiffs' claims is appropriately reserved for discovery.  *See Alford*, 13

F.Supp.3d at 591.  In this regard, the Defendants are well positioned to ascertain the time periods during which they owned and operated the Dresser Facility as well as the activity taking place during that time.  Accordingly, the Court denies Defendants' Motions as to the adequacy of Plaintiffs' Complaint under Rule 8.

## II.    Successor Liability Claims

Next, Defendants seek dismissal of Plaintiffs' successor liability claims, arguing that the Complaint fails to demonstrate a plausibility that "any of the Dresser Defendants is a successor to any entity."  [Doc. 18].  Louisiana courts have adopted the basic principles of corporate successor liability articulated by the United States Supreme Court in *Golden State Bottling Co. v. NLRB*, 414 U.S. 168, 182 n.5, 94 S.Ct. 414, 424; 38 L.Ed.2d 388 (1973), to wit:

> [T]he general rule of corporate liability is that, when a corporation sells all of its assets to another, the latter is not responsible for the seller's debts or liabilities, except where (1) the purchaser expressly or impliedly agrees to assume the obligations; (2) the purchaser is merely a continuation of the selling corporation; or (3) the transaction is entered into to escape liability.

*See Monroe v. McDaniel*, 16-214 (La. App. 5th Cir. 12/7/16); 207 So.3d 1172; *J.D. Fields & Co. v. Nottingham Construction Co.*, LLC, 15–723 (La. App. 1 Cir. 11/9/15); 184 So.3d 99; *Pichon v. Asbestos*, 10–570 (La. App. 4th Cir. 11/17/10); 52 So.3d 240, *writ denied*, 10–2771 (La. 2/4/11); 57 So.3d 317.

After relaying the basic details of Defendants' mergers and acquisitions over the past approximately 25 years [Doc. 1 ¶¶ 19-25], the Complaint alleges that the first two exceptions to the general rule of corporate liability are applicable.  [*Id.* ¶ 26].  Specifically, Plaintiffs contend that Defendants are liable to the extent obligations

were assumed under their merger and acquisition contracts[1] or, if no formal merger occurred, pursuant to the continuation doctrine.

With respect to the continuation doctrine, courts consider eight factors in determining whether an entity is a mere continuation of its predecessor: (i) retention of the same employees, (ii) retention of the same supervisory personnel, (iii) retention of the same production facility in the same physical location, (iv) production of the same product, (v) retention of the same name, (vi) continuity of assets, (vii) continuity of general business operations, and (viii) whether the successor holds itself out as the continuation of the previous enterprise. *Hollowell v. Orleans Reg'l Hosp. LLC*, 217 F.3d 379, 390 (5th Cir. 2000) (applying Louisiana law); *Boes Iron Works, Inc. v. Gee Cee Grp., Inc.*, 2016-0207, p. 13 (La. App. 4th Cir. 11/16/16); 206 So.3d 938, 949, *writ denied,* 2017-C-0040, 2017 WL 744658 (La. Feb. 10, 2017). Here, Plaintiffs have alleged retention of the Dresser Facility at the same Pineville address, retention of the production of valves, and retention of the name "Dresser" throughout the alleged mergers and acquisitions over the past approximately fifty years. [Doc. 1 ¶¶ 1, 9, 18–26].

The Court notes that the Complaint contains very little detail concerning the nature of Defendants' mergers and acquisitions and further notes that this information is critical to a successor liability claim. However, the Court acknowledges that Plaintiffs' successor liability allegations are likely based on the limited information available in the public records, which do not supply the substance

---

[1] In the case of a formal merger, "[a]ll liabilities of each corporation or eligible entity that is merged into the survivor are vested in the survivor." La. Rev. Stat. Ann. § 12:1-1107(4).

of Defendants' merger and acquisition agreements.  For this reason, courts often deny motions to dismiss successor liability claims and instead allow for discovery.  *See, e.g., Mitchell*, 2020 WL 1442966; *Ruston Louisiana Hosp. Co., LLC v. Lincoln Health Found., Inc.*, CV 18-0881, 2018 WL 6332850 (W.D. La. Nov. 20, 2018), *report and recommendation adopted*, 3:18-CV-0881, 2018 WL 6331698 (W.D. La. Dec. 4, 2018); *AMEC Constr. Mgmt., Inc. v. Fireman's Fund Ins. Co.*, CIV.A. 13-718-JJB, 2014 WL 1875264 (M.D. La. May 9, 2014).

Taking the facts describing Dresser's corporate history as true, Plaintiffs have stated a plausible claim for relief under a successor liability theory and raised "a reasonable expectation that discovery will reveal evidence" to support their claim. *See Twombly*, 550 U.S. at 556.  Plaintiffs' successor liability allegations are therefore sufficient to withstand a Rule 12(b)(6) Motion.

III.   <u>**Tort Claims**</u>

In addition to the foregoing arguments, Defendants contend that Plaintiffs have failed to state claims upon which relief can be granted with regard to the Plaintiffs': (i) continuing tort claim, (ii) strict liability claims under former Civil Code Articles 667 and 2322, (iii) trespass claim, (iv) nuisance claim, (v) fraud claim[2], and (vi) claim for civil fruits.

a)   **Continuing Tort**

Plaintiffs, in their Complaint, maintain that "'Defendants' ongoing actions and inactions continue to allow hazardous and toxic chemicals to escape from the Dresser

---

[2]   As addressed below, Plaintiffs deny that the Complaint asserts a fraud claim and, accordingly, do not substantively defend the Motions on the merits as to this point.

Facility and contaminate surrounding properties" such as to constitute a continuing tort. [*Id.*].  Defendants, in turn, contend that any liability should be limited to conduct causing the initial release of hazardous substances, which ceased no later than 2016 when operations at the Dresser Facility halted.[3]

Pursuant to Louisiana's continuous tort doctrine, where the operating cause of injury is continuous and gives rise to successive damages, prescription dates from the cessation of the wrongful conduct causing the damage. *Crump v. Sabine River Auth.*, 98-2326, p. 9 (La. 6/29/99); 737 So.2d 720, 728. However, a continuing tort "is occasioned by unlawful acts, not the continuation of the ill effects of an original, wrongful act." *Id.* Once the damage-causing conduct terminates, the tort also terminates, irrespective of whether the damage persists and progressively worsens. *Marin v. Exxon Mobil Corp.*, 2009-2368, p. 28 (La. 10/19/10); 48 So.3d 234, 254.

Louisiana jurisprudence is clear that neither the perpetual presence of contamination nor a failure to remediate contamination triggers application of the continuous tort doctrine when the operating cause of the plaintiff's property damage

---

[3]    In its Reply brief, Dresser notes that it does not seek dismissal of the Complaint's "prescription-related continuing tort claims" but instead of "claims for any alleged failure to responsibly and timely remove and/or remediate alleged contamination." [Doc. 32]. However, continuing tort is a limited doctrine that functions only to suspend the commencement of prescription when the operating cause of an injury is continuous. *See Young v. United States*, 724 F.3d 444, 447 (5th Cir. 2013) (describing Louisiana's continuing doctrine as one used "[f]or the purpose of determining when prescription starts to run"); *Watson v. Arkoma Dev., LLC*, CV 17-1331, 2018 WL 6274070, at *3 (W.D. La. Nov. 15, 2018), *report and recommendation adopted*, 3:17-CV-1331, 2018 WL 6274008 (W.D. La. Nov. 30, 2018) ("Continuing torts and continuing trespasses are not causes of action per se, but rather a doctrine by which plaintiffs can delay prescription of their claims."). Additionally, Louisiana does not recognize the failure to contain or remediate contamination as a separate and distinct claim. *Hogg v. Chevron USA, Inc.*, 2009-2632, p. 23 (La. 7/6/10); 45 So.3d 991, 1007. Therefore, the Court addresses the continuing tort claim in the context of prescription.

is the defendant's disposal of hazardous waste which has ceased. *See Marin*, 48 So.3d at 254 ("Any continued dissolution into the groundwater is the continuation of the harm caused by the previous, but terminated conduct, and falls under the category of 'progressively worsening damages,' not damage-causing conduct"); *Hogg v. Chevron USA, Inc.*, 2009-2632, p. 2 (La. 7/6/10); 45 So.3d 991 (holding that neither the continuous presence of gasoline on the plaintiffs' property nor the failure to contain or remediate the migrating gasoline constituted a continuous tort when the actual leaking of the gasoline ceased years prior to the action and the DEQ put plaintiffs on notice of the contamination); *Crump v. Sabine River Auth.*, 98-2326, p. 9 (La. 6/29/99); 737 So.2d 720, 729 ("[T]he breach of the duty to right a wrong and make the plaintiff whole simply cannot be a continuing wrong which suspends the running of prescription, as that is the purpose of any lawsuit and the obligation of every tortfeasor.").

The Complaint clearly establishes that Dresser ceased its operations in 2016 and, since this time, alleges no further activity taken by Defendants that would constitute a continuing tort.[4] Accordingly, the Court dismisses Plaintiffs' continuing tort claim.[5]

---

[4]     Citing several cases finding fraud as a basis for continuing tort, Plaintiffs argue in their Opposition that Defendants' active concealment of information concerning the contamination gives rise to an additional basis for continuing tort. However, Plaintiffs explicitly state – and the Court agrees – that the Complaint does not assert a fraud claim.

[5]     Although the Court finds that Plaintiffs have failed to state a continuing tort claim such to suspend the commencement of prescription, it does not take the position that Plaintiffs' claims have prescribed.  Given the nature of the allegations, it is likely that the prescriptive period commenced when Plaintiffs first acquired knowledge of the potential contamination of their properties from the DEQ in January of 2020.  *See* La. Civ. Code art. 3493 ("When damage is caused to immovable property, the one-year prescription commences to run from the day the owner of the immovable acquired, or should have acquired, knowledge of the damage."); *Hogg v. Chevron USA, Inc.*, 2009-2632, p. 7 (La. 7/6/10); 45 So.3d 991, 997

**b)      Strict Liability**

    i.      *Article 667*

The pre-1996 version of Article 667 imposed liability on landowners or proprietors for actions that damage his neighbors caused by ultrahazardous activities. *Morgan Plantation, Inc. v. Tennessee Gas Pipeline Co.*, LLC, No. 16-CV-1620, 2017 WL 4864489, at *5 (W.D. La. Sept. 21, 2017) (citations omitted). Louisiana courts employed a three-prong test to determine whether an activity was ultrahazardous.  Under this test, in order to qualify as an ultrahazardous activity, the conduct: (i) must relate to an immovable, (ii) must itself cause the injury and the defendant must be engaged directly in the injury-producing activity, and (iii) must not require substandard conduct to cause injury. *Id.*  (citing *Bartlett v. Browning-Ferris Indus., Chem. Svcs., Inc.*, 683 So.2d 1319, 1321 (La. Ct. App. 3d Cir. 1996)).

Defendants claim that Plaintiffs failed to establish that their alleged injuries were caused by an ultrahazardous activity because the third prong of the test is not met.  The Court agrees.  The Complaint alleges that "Defendants knew or, in the exercise of reasonable care, should have known that their activities and omissions at the Dresser Facility would have caused the damage sustained by Plaintiffs" and, significantly, that "[t]he damage could have been prevented by the exercise of reasonable care by Defendants, but Defendants failed to exercise such reasonable care." [Doc. 1 ¶¶ 58–59].

---

(holding that prescription commenced when plaintiffs received notice from the DEQ that contamination was detected in the groundwater and soil underlying their properties).

Because Plaintiffs alleged that their injuries were caused by the substandard care of Defendants – and, importantly, did not allege the activities *did not require substandard care* to cause their injuries – the third prong fails. *See Morgan Plantation*, 2017 WL 4864489, at *5 (finding the plaintiffs' former Article 667 strict liability claim did not satisfy the third prong "because the petition alleged that the damages were caused by the substandard care of the defendants, rather than that the activities did not require substandard care to cause injury"); *Pierce v. Exxon Mobil Oil Corp.*, 2013 WL 1856079, *7 (E.D. La. Apr. 30, 2013) (holding that the third prong was not met because the petition failed to "allege that the activity is ultra-hazardous in and of itself, but rather that the substandard care of Defendants caused this damage."). Accordingly, Plaintiffs' negligence allegations defeat their Article 667 claim, and the Motions are granted as to this claim.

ii.   *Article 2322*

Article 2322 concerns premises liability for defective buildings. Prior to 1996, to recover under Article 2322, a plaintiff was required to show "(1) ownership of the building, (2) the owner knew or, in the exercise of reasonable care, should have known of the ruin or defect, (3) the damage could have been prevented by the exercise of reasonable care, (4) the defendant failed to exercise such reasonable care, and (5) causation." *Broussard v. State ex rel. Office of State Bldgs.*, 113 So. 3d 175, 182-83 (La. 2013).

According to the Complaint, "[t]he Dresser Facility, and the systems and equipment therein, contained defects and/or conditions which … allowed for the release of chlorinated solvent chemicals" onto their properties [Doc. 1 ¶ 63]. The

12

Complaint further alleges that Defendants knew or should have known of these defective conditions and that their alleged property damage could have been prevented in the exercise of reasonable care.  [*Id.* ¶¶ 69–71].  These allegations are sufficient to support a claim under Article 2322.  *See Watson v. Arkoma Dev., LLC*, CV 17-1331, 2018 WL 6274070, at *6 (W.D. La. Nov. 15, 2018), *report and recommendation adopted,* 3:17-CV-1331, 2018 WL 6274008 (W.D. La. Nov. 30, 2018); *Morgan Plantation*, 2017 WL 4864489, at *6.

c)      **Trespass**

Next, Defendants seek dismissal of Plaintiffs' trespass claim.  The Complaint alleges that Defendants committed a trespass by allowing hazardous materials from the Dresser Facility to migrate into the groundwater and soil underlying Plaintiffs' properties.  [Doc. 1 ¶¶ 75–79].  Defendants contend that any purported trespass was not an intentional, affirmative act and that, accordingly, this claim fails because Louisiana courts do not recognize a claim for trespass caused by a negligent, passive act.  [Doc. 19-1].

Under Louisiana law, a trespass is an unlawful physical invasion onto the property of another.  *Vintage Assets, Inc. v. Tennessee Gas Pipeline Co., L.L.C.*, CV 16-713, 2017 WL 3601215, at *3 (E.D. La. Aug. 22, 2017) (citing *Richard v. Richard*, 24 So. 3d 292, 296 (La. App. 3 Cir. 2009)).  The Louisiana Supreme Court has not explicitly addressed whether an intentional, affirmative act is required to prove trespass.[6]  Nevertheless, several courts in this circuit, in interpreting Louisiana law,

---

[6]      "Under the Erie doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law."  *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996).  In applying Louisiana substantive law, federal courts look to the final decisions of

have held that an intentional act is required based on the Louisiana Supreme Court's jurisprudence in *Hogg v. Chevron USA Inc.  See Petry v. R360 Envtl. Sols. of Louisiana LLC*, 2:20-CV-00820, 2020 WL 6494901, at *2 (W.D. La. Nov. 4, 2020); *Vintage Assets*, 2017 WL 3601215, at *4.

In *Hogg*, the action stemmed from the migration of toxic substances from leaking underground storage tanks at a service station into the groundwater and soil underlying the plaintiffs' properties.  2009-2632, p. 2 (La. 7/6/10); 45 So.3d 991, 995. After receiving notice of the contamination from the DEQ, the plaintiffs filed suit alleging, among other claims, continuing trespass.  *Id.* at 996.  Prior to discussing the merits of the continuing trespass claim, the Court stated:

> We note, without deciding the issue, that it is questionable whether the tort of trespass even applies in this situation because civil trespass is generally considered to be an intentional tort, requiring proof that the defendant took some intentional action that resulted in harm to the plaintiff.  (citations omitted).  It has been suggested that the action more properly lies in nuisance.  1 Dan B. Dobbs, The Law of Torts § 53, at 107 (2001) ("Nuisance or negligence rather than trespass is definitely the approach courts take when liquids percolate underground to enter the plaintiff's land beneath the surface.").  Because plaintiffs' petition asserts claims arising both in trespass and nuisance, and because the analysis is the same insofar as the issues presented in this case are concerned, it is not necessary to resolve this thorny issue.

*Id.* at 1002.

Given the Louisiana Supreme Court's dicta in *Hogg*, which dealt with analogous facts to those at hand, the Court understands Louisiana law to require an intentional act to prove the tort of trespass.  Critical to the Court's analysis here, the Complaint makes no allegation that Defendants engaged in intentional misconduct

---

the Louisiana Supreme Court.  *In re: Katrina Canal Breaches Litig.*, 495 F.3d 191, 206 (5th Cir. 2007).

or otherwise took an affirmative step designed to cause the alleged contamination of Plaintiffs' properties.   Accordingly, Defendants' Motions are granted as to the trespass claim.

### d)   Nuisance

Finally, Defendants seek dismissal of the private and public nuisance claims insofar as they constitute a "continuing nuisance" claim, stating:

> Plaintiffs have asserted claims for both public and private nuisance.  But Plaintiffs' claim for this alleged continuing nuisance fails for the same reason that their continuing tort claims fail. (citations omitted). As explained above, Plaintiffs allege that operations at the Facility ceased no later than 2016.  Thus, even if the nuisance allegedly created by the Dresser Defendants formerly existed, it has terminated.  Moreover, the alleged continued presence of constituents on Plaintiffs' properties is simply a continuation of the effects of the original act. (citations omitted).

[Doc. 18-1].  For the reasons discussed in Part II *infra*, Louisiana law does not, under these facts, permit a claim for nuisance beyond 2016 when operations at the Dresser facility halted.  Because Defendants do not otherwise oppose Plaintiffs' claims for nuisance under applicable Louisiana law, the Motions are denied as to Plaintiffs' nuisance claims.

## IV.   <u>Other Claims</u>

Defendants' Motions also move for dismissal of a fraud claim, which Plaintiffs contend they did not intend to assert. [Doc. 30]. Plaintiffs also state that the Complaint only brings strict liability claims under Civil Code Articles 667, 2317, and 2322 for alleged misconduct occurring prior to the 1996 amendments.  Further, Plaintiffs do not oppose dismissal of the claims for civil fruits.  [*Id.*].  Accordingly, to the extent the Complaint asserts claims for fraud, civil fruits, or strict liability under

the post-1996 versions of Articles 667, 2317, and 2322, the Court dismisses these claims without prejudice.

C<small>ONCLUSION</small>

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART Defendants' Motions.

IT IS HEREBY ORDERED that the Court dismisses WITH PREJUDICE the following claims against Defendants:

- Continuing tort,

- Strict liability under former Article 667, and

- Trespass.

IT IS FURTHER ORDERED that the Court dismisses WITHOUT PREJUDICE the following claims against Defendants to the extent such claims have been asserted:

- Fraud,

- Civil fruits, and

- Strict liability under the post-1996 versions of Articles 667, 2317, and 2322.

IT IS FURTHER ORDERED that in all other respects, Defendants' Motions are DENIED.

THUS DONE AND SIGNED in Chambers on this 6th day of January, 2021.

_____
DAVID C. JOSEPH
UNITED STATES DISTRICT JUDGE